ROSALIE M. GILBERT, Plaintiff in Error, v. JOHN D. SEITZ, Defendant in Error.

Kansas City Court of Appeals, May 19, 1913.

1. **CONTRACTS: Rescission: Fraud and Deceit.** An action in equity for rescission of contract of sale of mining stock and recovery of purchase price, is compared with sale of a part of same lot of stock, considered in an action for fraud and deceit, in Fisher v. Seitz, decided at same time.

2. **————: ————: Purchase Price: Trial Court.** Where in an action for rescission of contract of sale of mining stock and recovery of purchase price on the ground that the vendor fraudulently represented he was selling at cost price, the vendor testified that he did not so represent and the vendee that he did, the two being equally trustworthy, an appellate court will defer to the finding of the trial court.

3. ———: ———: **Appeal and Error.** In an action for rescission of contract of sale of mining stock, on appeal by plaintiff to an appellate court, the respondent has three advantages of position which, if not overcome, require an affirmance of the judgment; one is the finding of the trial judge, to whom the appellate tribunal will defer; second, the burden is on the plaintiff to make out his case; third, the proof adduced must clearly and convincingly show guilt of fraud.

Error to Jackson Circuit Court.—*Hon. Thos. J. Seehorn*, Judge.

AFFIRMED.

*Piatt & Marks*, and *Ashley & Gilbert for* plaintiff in error.

(1) The representation made to plaintiff's agent was in effect a representation to the plaintiff; it was made with reference to a sale and to induce a sale and therefore inures to the purchaser. Jackson Co. ex rel. v. Schmid, 141 Mo. App. 229; Tuckwell v. Lampert, 59 Mass. 23; Ward v. Borkenhagen, 50 Wis. 459. (2) The contract was in law with the principal; and the fraud was practiced on her. Cramer v. Wright, 15 Ind. 278. (3) Defendant having persuaded plaintiff that he was ready to place her on the same footing as his intimate friends to whom he was selling stock at what it cost him, assumed as to her a fiduciary relationship which rendered his false statement as to price paid actionable. Beale v. Wright, 8 Am. & Eng. Ann. Cases, 1061, note 37 and note on page 1062; Cottrill v. Krum, 100 Mo. 397; Bank v. Richmond, 235 Mo. 543; Judd v. Walker, 215 Mo. 321; Broaski v. Carr, 127 Mo. App. 286; Phelps v. Jones, 141 Mo. App. 223.

*L. C. Boyle* and *W. L. Stocking* for defendant in error.

It is a familiar principle of equity that in rescission the vendee must place the vendor *in statu quo*. Plaintiff after knowing of the alleged fraudulent representation and after he had made a tender of his

stock, participated in a proceeding that made it impossible to place respondent *in statu quo*. Rescission imports that both parties shall be put *in statu quo,* each receiving what he had parted with to the other. Small v. Speece, 131 Mo. App. 513, 517; Lewis v. Land Co., 124 Mo. 672; Kirk v. Seeley, 63 Mo. App. 262; Shoe Co. v. Bank, 56 Mo. App. 662; Carson v. Smith, 133 Mo. 606.

ELLISON, P. J.—Plaintiff's action is in equity, for the rescission of a contract of purchase of mining stock from defendant, and for a judgment for the purchase price. The ground upon which a rescission is sought is the allegation that defendant induced her to purchase by false representations. The judgment in the trial court was for the defendant.

Plaintiff's part in the transaction was through her husband as her agent. The property concerned and which the stock in controversy represented, was known as the Lodi mine, in the State of Nevada. It is the same mine and the stock in controversy is a part of the holding of defendant involved in the case of Fisher v. Seitz, decided this term. A short history of the mine and defendant's connection with it, how he came to be interested in it, what its prospects were and how he came to sell stock to Fisher and to this plaintiff and others, will be found in that case, to which we refer. In that case we ascertained that the evidence established and left no doubt of the existence of the Lodi property as a mine of much prospect and consequently that its stock was of substantial present value at the time of the sale to these people; and that at that time defendant had confidence in its future and was fully justified in stating such confidence to all with whom he talked on the subject. That case was an action at law for damages for fraud and deceit alleged to have been practiced upon Fisher and the verdict of the jury was for defendant. But this case, as we

shall see, is confined to much narrower ground than was covered in the other.

Plaintiff's husband, who, as we have said, carried on the entire business, at the time of the transaction was a lawyer of varied business experience and of high character. So too defendant was a business man of integrity, with the confidence of those who knew him. They were the principal witnesses in the case. Mr. Gilbert, in his testimony, candidly conceded what was so overwhelmingly shown to be true in the Fisher case, that defendant had every faith in the prospects of the mine; and that, he, himself, understood that any mining deal was "a chance"—"a gamble." Defendant had bought fifty thousand of the three million shares of stock, at twenty cents, paying ten thousand dollars therefor. He likewise had an option for more of the stock and he invested more money. All the stock had been issued save six hundred thousand shares which was known as treasury stock, and this was being old at fifty cents per share for money to further develop the mine. Mr. Gilbert says that defendant approached him with a statement of his belief in the mine and of its prospects and that he was offering to his friends in Kansas City (Gilbert being one of them) some of the stock he had secured and *at the price he had paid for it, which he represented was forty cents*. Now the complaint is that had Mr. Gilbert known defendant had only paid twenty cents for the stock, he would not have bought it; and therefore the controversy narrowed down to the single question whether defendant represented he had paid forty cents for the stock. The reason given for full reliance on defendant's representations, is friendship. There is no pretense that defendant bore any fiduciary relation to plaintiff; or her husband, and nothing is suggested to show that he was under any obligation to sell his stock to either of them at cost. The only thing dwelt upon is the friendship said to have existed between

Mr. Gilbert and defendant. It is not said that defendant was a mining expert and Gilbert a novice. Each were stockholders in the Lucky Tiger mine, each were members of certain clubs, and each knew the world. There was no helpless dependence on defendant, requiring that he should care for Gilbert. One was a real estate agent and the other was a skilled lawyer; neither of these callings suggesting a necessity that one should look after the interest of the other.

We need not consider whether a vendor is required to inform a vendee what the article proposed for sale cost, as that is not the point plaintiff makes. She does not contend for that; but she claims that he had no right to falsely represent that he paid a certain price and was selling at cost. We will pass by all question whether it is an actionable misrepresentation for a vendor to puff his goods by a false statement as to what he paid for them, or that he was selling at cost. That is reprehensible, whether between strangers or friends. But we will assume that Gilbert and Seitz being friends, the former having confidence in the latter's honesty and business judgment, the latter would be liable to an action for rescission of a contract of sale induced by his false and fraudulent representation that he was selling at cost price. This brings us to the facts as shown in evidence and the trial court's finding.

And on that head we are left with direct contradiction of one party by the other. As triers of the facts we do not believe that the conflict comes from wilful misstatement by either. But defendant has an advantage as respondent to plaintiff's appeal. He has the finding of the learned trial court in his favor, and it is our duty to defer to such finding when doubt obscures the right. [Flood v. Busch, 165 Mo. App. 143, 153; Davis v. Forman, 229 Mo. 27, 46.] Another advantage with defendant lies in the fact that he *is* the defendant, for the burden is on the plaintiff; and

he must be able to clearly show the guilt of the defendant in a case involving fraud. [Bailey v. Smock, 61 Mo. 213; Dunn v. White, 63 Mo. 181.] This has not been done. The record will not justify us in saying that defendant is in the wrong. The most we can do is to note the positive conflict, and if we allow that each balances the other, the advantage of position being with defendant, as just noted, it gives him the judgment.

If, however, we should take circumstances and probabilities into consideration, it may be asked why should defendant have volunteered to state to Mr. Gilbert that he had paid forty cents, or any other price, for the stock? He knew that Gilbert understood he was a business man of abundant means. As a discreet man, he must have known that stating to Gilbert that he was selling him stock for forty cents, the cost price, when at the same time it would bring fifty cents outside, would cause a suspicion of motive and excite distrust.

It is our conclusion that the record does not justify our interference and hence we affirm the judgment. All concur.