JAMES R. HITCHCOCK, Appellant, v. JAMES BAUGHAN, Respondent.

St. Louis Court of Appeals, May 14, 1889.

1. **Evidence:** DECLARATIONS OF PARTY. The declarations of a party sprung upon him in a trial, without warning, furnish a very weak and doubtful species of evidence. It is of some evidentiary value, however, and may suffice to take a case to the jury, when all the other evidence would be insufficient to do so without it.

2. **False Representations:** INSTRUCTIONS. On the trial of a counter-claim setting up false representations made by the plaintiff to the defendant's injury, instructions to the effect that the evidence of such false and fraudulent representations must be "clear and convincing," or of "the clearest character," or must make the fact appear "in the clearest manner," was properly refused. While it is often said that, in order to justify equitable interposition on the ground of such representations, the court should be satisfied of their existence by the clearest evidence, and that they were made under such circumstances as show that the contract was founded on them, there is yet no warrant of law for advising the jury in such superlative terms as to the *quantum* or degree of proof necessary to make out an action or defense founded on deceit. It is sufficient that there is a preponderance of evidence, to the reasonable satisfaction of the jury.

3. **Deceit**: INSTRUCTION. In considering a counter-claim for a deceit touching the boundaries of land, an instruction that, "if defendant had opportunity to have ascertained by reasonable diligence the correct boundaries of said real estate, he cannot succeed in this case, unless it appears from the evidence that plaintiff used some fraud, artifice, trick, or deceit to throw him off his guard and prevent his making proper inquiries and research as to the boundaries," was erroneously refused, and ought to have been given upon request of the plaintiff.

4. **Deceit**: FINDING UPON ISSUE. Where the defendant claimed that he was damaged in the purchase of land by the plaintiff's false representations of the boundaries, a general finding for the defendant is not responsive to the issues. The measure of damages is the difference between the real value of the land, and its value as represented.

*Appeal from the Ozark Circuit Court.*—HON. J. F. HALE, Judge.

REVERSED AND REMANDED.

*Thomas H. Musick,* for the appellant.

(1) The law should have been declared as prayed in appellant's declarations 1, 2, 3, to the effect that to defeat appellant's action the evidence of fraudulent misrepresentation must have been clear and convincing. (2) The law should have been declared as prayed in appellant's fourth declaration, to the effect that if the avenues of information were open to respondent he cannot recover unless it appears that appellant used some artifice to throw him off his guard. *Dunn v. White,* 63 Mo. 181; *Bailey v. Smock,* 61 Mo. 213; *Langdon v. Green,* 49 Mo. 363, 368; *Holland v. Anderson,* 38 Mo. 55; 1 Story Eq. Jur., sec. 200. (3) The fourth declaration is also the law of this case. There is nothing to show that Hitchcock used any trick or artifice to throw Baughan off his guard, whereas, Baughan certainly acted with very great indiscretion in purchasing without taking more pains to ascertain the boundaries of the

land. *Langdon v. Green*, 49 Mo. 361 [369]; *Holland v. Anderson*, 38 Mo. 55 [58]; *Bailey v. Smock*, 61 Mo. 213 [216]; *Dunn v. White*, 63 Mo. 181 [186]; 2 Pomeroy's Eq. Juris., secs. 892, 893.

*A. H. Livingston, W. N. Evans*, for the respondent.

The declaration of law given by the court, on its own motion, covered the whole case, and correctly declared the law governing them. If, however, the court might have erred in its opinion of the law, yet if the finding was for the right party this court will not reverse the cause upon the single ground that the court misapprehended the law. The cause was tried by the court sitting as a jury, and the finding is fully supported by the evidence. *Gray v. Packet Co.*, 64 Mo. 47; *Breckenridge v. Ex. Co.*, 87 Mo. 62; *Bridges v. Railroad*, 6 Mo. App. 389; *Lewis v. Meissbach*, 6 Mo. App. 577; *Semple v. Dennis*, 7 Mo. App. 596; *Loeffler v. K. N. T. P. Co.*, 7 Mo. App. 185; *Morris v. Railroad*, 79 Mo. 367; *Kelly v. Clauly*, 15 Mo. App. 519; *Galbrath v. City of Moberly*, 80 Mo. 484. In the cases of *Pomeroy v. Benton*, 57 Mo. 531, and 77 Mo. 64, the supreme court says: "The assertion to the injury of another of something, not known to be true, is equally as reprehensible as the assertion of that which is known to be false." And in case of *Bank of North America v. Crandall*, 87 Mo. 208, it is said: "When one intentionally misrepresents a material fact, or produces a false impression, in order to mislead, cheat or obtain an undue advantage of another, it will constitute positive fraud in the truest sense of the term." And to the same effect see *Dunn v. White*, 63 Mo. 121; *Caldwell v. Henry*, 76 Mo. 181, 254; *Brownlee v. Hewitt*, 1 Mo. App. 360; *Smithers v. Bircher*, 2 Mo. App. 499. The evidence was amply sufficient, and as strong as it can usually be made in such cases, and as strong as courts of equity ever require. In *Hopkins v. Seivert*, 58 Mo.

202, it is said, "that very slight circumstances, though apparently trivial and unimportant in themselves, may, when combined, afford irrefragable proof of fraudulent intent."

THOMPSON, J., delivered the opinion of the court.

This was a suit on a promissory note given for a part of the purchase money of a tract of land. The answer admits the making of the note but sets up, by way of counter-claim, that the plaintiff fraudulently misrepresented the boundaries of the land, so as to make it appear to take in a dwelling house, kitchen, and barn of the value of three hundred dollars, a certain fourteen acres of improved land of the value of two hundred dollars, and a certain piece of unimproved land of the value of one hundred dollars,—and asks a judgment against the plaintiff for damages in the sum of five hundred dollars. The plaintiff, by a reply, put in issue the affirmative matter thus set up in the answer.

The case was tried by the court sitting as a jury, and there was a finding and judgment for the defendant, from which the plaintiff prosecutes this appeal. The entire evidence related to the counter-claim, and, in so far as it supported the counter-claim, it tended to show that when the plaintiff and the defendant were bargaining for the sale of the land, the plaintiff took the defendant to the land to show it to him, and there requested one Goforth, who resided in the house which was supposed to be on the land, and who had sold the land to the plaintiff, to point out the land and its boundaries to the defendant; that Goforth did not profess to know where the lines were, but told the defendant where he supposed they ran; that the lines, as thus pointed out by Goforth to the defendant, made the tract of land include the house. The evidence tends to show that the land had not been surveyed at that time, and while Goforth did not tell the defendant of that fact, the

defendant did not inquire of him about it. In short, we see no evidence that either the plaintiff or Goforth knew where the lines were and intentionally misrepresented their location to the defendant, with the exception of the testimony of a witness named Phelps as to a declaration which he had heard the plaintiff make after the sale, to the effect that the plaintiff knew that the houses were not on the land and did not care whether the land was in Douglas county or not, because all he was after was the money. Evidence of declarations sprung upon a party without warning is perhaps the weakest and most doubtful species of evidence that is admissible in a court of justice. *Crawford v. Spencer*, *ante*, p. 17. Nevertheless it is admissible, and has some evidentiary value. But for this testimony of Phelps we should incline to hold that there was no evidence to take the case to the jury on the issue of fraudulent representations raised by the answer. The boundaries of the land turned out, upon a survey, not to be where the defendant supposed they were. They did not include the house, and they excluded some other land that he thought he was getting.

The errors assigned relate to the instructions or declarations of law which the court gave and refused. All of those asked by the plaintiff, five in number, were refused. Four of them embodied declarations to the effect that, in order for the defendant to be entitled to the relief prayed for in his answer, the evidence of the false and fraudulent misrepresentations must be "clear and convincing," or "of the clearest character," or making the fact of such representations "appear in the clearest manner." These expressions are found in the first, second, third and fifth instructions, which were requested by the plaintiff and refused. It is frequently said in cases in equity, where relief is sought on the ground of fraudulent misrepresentations, that in order to justify equitable interposition, the court should be

satisfied by the clearest evidence of the fraudulent misrepresentations, and that they were made under such circumstances as to show that the contract was founded upon them ; and this language has been used in judicial opinions in cases at law. *Holland v. Anderson*, 38 Mo. 55, 59 ; *Langdon v. Green*, 49 Mo. 363, 368 ; *Bryan v. Hitchcock*, 43 Mo. 527 ; *Bailey v. Smock*, 61 Mo. 218. But we apprehend that there is no rule of law which warrants a court, in instructing a jury in such a case, in advising them as to the *quantum* or degree of proof necessary to make out an action or defense predicated upon deceit, in such superlative terms.

We know of no principle which takes such a case out of the ordinary rule, that the facts on which the right of action or defense is predicated must be made out by a preponderance of the evidence and to the reasonable satisfaction of the jury. This was the probative force required to establish such allegations, as embodied in the instructions which were given in *Wannell v. Kem*, 57 Mo. 478, 485, and which met with the approval of the supreme court. As this counter-claim was in the nature of a declaration in an action at law founded upon deceit, and as the declarations of law given by the court must be tested by the same rules which would apply if the case were tried before a jury, we are unable to see that the court erred in refusing these four instructions.

But the same can not, we think, be said of the following instruction, numbered four, tendered by the plaintiff and refused :

" That if defendant had opportunity to have ascertained by reasonable diligence the correct boundaries of said real estate, he cannot succeed in this case, unless it appears from the evidence that plaintiff used some fraud, artifice, trick, or deceit to throw him off his guard and prevent his making proper inquiries and research as to the boundaries."

This instruction expressed a correct principle of law. In *Buford v. Caldwell*, 3 Mo. 477, it was declared that relief would not be afforded in such a case, either at law or in equity, where the land was equally known to both parties, or where both parties had equal means for information in respect of it and were equally negligent in regard to it. In *Glasscock v. Minor*, 11 Mo, 655, the principle was laid down that a mistaken opinion in respect of the quality or title to the land, where the means of information were equally accessible to both parties, was no fraud. In *Morse v. Rathburn*, 49 Mo. 91, the court proceeded upon the principle that it is not sufficient that the representation be false, but it is essential that the purchaser was deceived by it—that he must have trusted to it and bought on the strength of it; and that, if he inspected the premises and the defect was as open to observation to him as it was to the other party, it could not be said that he had been deceived. In *Langdon v. Green*, 49 Mo. 363, 368, it was said: "Fraudulent representations and conceal- ment by a vendor of land, as to the nature, quality, quantity, situation and title thereof, affecting the whole subject-matter of the contract, will entitle the vendee to relief; but such misrepresentation by the vendor must be in reference to some material thing unknown to the vendee, either from not having examined, or from want of opportunity to be informed, or from special confidence being reposed in the vendor." These principles were re-affirmed and applied in *Dunn v. White*, 63 Mo. 181, which was an action by a vendee of land against his vendor to recover damages for deceit in misrepresenting to him the boundaries of the land. The court cited with approbation the cases of *Clark v. Baird*, 7 Barb. 65, and *Brooks v. Hamilton*, 15 Minn. 26, in both of which cases it was held that if the pur- chaser had the opportunity of ascertaining the true

boundary line, and neglected to inform himself, he could not recover damages for the misrepresentation of the boundary by the vendor. The principle was summarized in this court in *Clark v. Edgar*, 12 Mo. App. 352, where it was said : "If the buyer trust to misrepresentations not calculated to impose on men of ordinary prudence, or if he neglect means of information easily within his reach, he cannot recover." In *Bailey v. Smock*, 61 Mo. 217, the principle was said to be that "the misrepresentations must be concerning something unknown to the party injured, who has been induced to act or abstain from examination, from some special confidence reposed in the other party, as in this case, where the vendor prevents the vendee from making an examination of the records in regard to the title by assurances that the title is perfectly good and the property is free from incumbrances, and upon the faith of such assurances and representations the vendee abstains from making the proper examination."

These principles, it would appear, were aptly embodied in the above instruction. Both parties went upon the land. It had never been surveyed. The boundaries were not accurately known to either party. The means of accurate information were equally as open to the defendant as to the plaintiff ; and it seems a reasonable conclusion, that, unless the plaintiff use some fraud, artifice, trick, or deceit to throw the defendant off his guard and prevent his making proper inquiries and researches as to the boundaries, he can not sustain this counter-claim.

As the instruction which the court gave of its own motion is also challenged, we think it proper to say that we see no error in it, provided it had been given with the qualification of, or in connection with, the last instruction above set out. As it appears from the fact of refusing this instruction that the court ignored and

refused to apply to the facts the principle of law therein embodied, the judgment will be reversed and the cause remanded. It should be observed, although this point has not been made by the appellant, that the finding of the circuit court is not responsive to the issue raised upon the counter-claim. That part of the answer demanded affirmative relief against the plaintiff; and the court should have assessed the damages, if any, sustained by the defendant by reason of the false and fraudulent representations which the court found to have been made. The measure of such damages is the difference between the value of the land as represented and the value of the land as it actually turned out to be. If the damages found by the court exceeded the amount of the note sued on, with interest, judgment should have been entered for the defendant for the excess. If less than such amount, judgment should have been entered in favor of the plaintiff for the difference.

The judgment is reversed and the cause remanded. All the judges concur.