ALBERT FRANKENTHAL *et al.*, Appellants, v. JACOB GOLDSTEIN *et al.; JACOB E. ROTH *et al.*, Interpleaders, Respondents.

St. Louis Court of Appeals, February 24, 1891.

1. **Practice, Trial:** FRAUD: PEREMPTORY INSTRUCTION. A peremptory instruction to the jury to find fraud in fact is not proper, if the conceded facts do not establish the fraud so plainly that fairminded men could not differ concerning the conclusion to be drawn therefrom.

2. **Fraud:** INSTRUCTIONS. It is not error to instruct the jury, upon an issue of fraud, that the fraud must be established to their satisfaction.

3. ——— : ———. When a sale is fraudulent as to the creditors of the vendor, it is invalid, even if the vendee has paid to the vendor the full value of the property sold. And the refusal of an instruction to that effect, asked by the party charging the fraud, will be error, where there is sufficient evidence upon which to predicate it.

*Appeal from the Madison Circuit Court.*—HON. JAS. D. Fox, Judge.

REVERSED AND REMANDED.

*David Goldsmith,* for appellants.

*B. B. Cahoon* and *J. J. Russell,* for respondents.

THOMPSON, J.—Several creditors of the firm of Goldstein & Rosenwater sued out an attachment against that firm and levied upon their stock of goods. Two third parties, Jacob E. Roth and Samuel White, interpleaded for the property. Roth was a merchant and a creditor of defendants, and White had been one of their employes, and was also a creditor. In satisfaction, or pretended satisfaction, of the claims of these two creditors, and for a further consideration paid by them, the defendants conveyed to them all their property in two stores which they were carrying on. The stock in their store at Charleston they conveyed to White ; and the stock in their store at Poplar Bluff, they conveyed to Roth. Their books of account, containing accounts against their customers of the nominal value of some $28,000, they retained. The sole issue on trial was, whether these conveyances were fraudulent as against the creditors of the defendants. A trial by jury resulted in a verdict and judgment for the interpleaders, thus upholding the validity of the conveyances. The plaintiffs, appealing, present a voluminous record — two large bound volumes — and assign three principal errors, the only ones which we shall notice.

I.   The first is that the verdict is contrary to all the evidence.   We have no hesitation in saying that this error is not well assigned.   It was admitted that the burden of proving fraud was upon the plaintiffs, these appellants.   It was also admitted, on the argument, that no case has been found in Missouri, wherein the trial judge has been sustained in directing a verdict in favor of the party having the burden of proof, where the issue was fraud in fact as distinguished from fraud in law.   In our judgment this can be done in two cases only :   *First.*   Where there is a conceded or uncontroverted state of facts, with nothing for the jury to pass upon in respect of the credibility of evidence, and where, upon that state of facts, the law draws the inference of fraud as a mere conclusion.   *Second.*   Where, as in this case, the question is, what is termed fraud in fact as distinguished from fraud in law ; and there is a state of facts, equally conceded, upon which the inference of a fraudulent or dishonest intention is so plain that fair-minded men could not differ concerning the conclusion of fact to be drawn.

A close analogy exists in actions for damages for negligence.   If the facts are conceded, the court may draw the inference of negligence in those cases where an established rule of law, common or statutory, requires the inference to be drawn.   Moreover, if the facts are in like manner conceded, and the negligence imputed is a conclusion of fact, not a conclusion of law, yet, where fair-minded men could not differ as to the conclusion that the inference ought to be drawn, the court may direct the jury to draw it.

In either of these cases,—fraud or negligence,—if the courts were freely to direct verdicts in favor of parties sustaining the burden of proof, they would soon overturn the independence of juries, which is so sedulously guarded by the constitution and laws of this state, and overturn our present system of jury trial.

Applying this principle to the present case, the facts that our law allows a failing debtor to prefer his creditors, and that there was evidence tending to show that the debts which the defendants in this case owed to Roth and to White were honest debts, and that the property conveyed by them to Roth and White was conveyed at a fair valuation, suggest that it is *possible*, to say the least, for fair-minded men to say that these transactions were consistent with honesty and right-acting under the rules of law ; and this is enough to make it clear that the court could not properly have directed a verdict in favor of the party sustaining the proposition of fraud, and that we cannot properly order a new trial on that ground. The fact, that twelve seemingly fair-minded men *have* found, upon the mass of evidence submitted to them, in favor of the conclusion of honesty and right-acting and against the conclusion of fraud, ought surely to have *some* weight in the minds of judges in deciding such a question. We see nothing in the evidence which impresses us with the idea that the jury have taken an extraordinary or unusual view of it, much less that they have acted from passion, prejudice, or under an obvious mistake.

II. Error is next assigned upon the giving, at the request of the interpleaders, of the following instructions: "3. You are further instructed that, before you will be warranted in finding that the bill of sale read in evidence, and the sale of the goods to Roth and White, was made by Goldstein & Rosenwater, with the intent to hinder, delay or defraud creditors, and that said Roth and White had knowledge of such intent, it is incumbent upon defendants to prove such facts ; and the burden of establishing such facts rests upon the defendants, and, unless they have established, *to your satisfaction*, that the sale of said goods was made with the intent to hinder, delay or defraud creditors, and that Roth and White had knowledge of such intent,

then you ought not to find that such sale was fraudulent and void."

"9. You are further instructed that, while the burden rests upon defendants to *establish to your satisfaction* the fraudulent intent of Goldstein & Rosenwater in the transfer of the goods in controversy, and the knowledge of Roth and White of such intent, yet such facts need not be proved by direct and positive evidence, but may be deduced from all the facts and circumstances attending such sale, and if from all the evidence and circumstances in proof you can *satisfactorily and reasonably* infer their existence, you will be warranted in finding the issues in this case for the defendants."

The parts objected to by the appellants are *italicized*. It is perceived that, by an obvious error, the word "defendants" is used in each of these instructions instead of the word "plaintiffs." Regarding the interpleaders as standing towards the attaching plaintiffs in a sense like plaintiffs towards defendants in an ordinary action, this slip of the pen explains itself.

The criticism upon these instructions is, that fraud may be established by a mere preponderance of the evidence; whereas these instructions require that the evidence should possess a higher probative force than a mere preponderance over the opposing evidence. No decision of an appellate court of this state has been cited in support of this proposition, which is in point; but we are referred to two decisions in other jurisdictions which bear out the appellants' contention. In *Ruff v. Jarrett*, 94 Ill. 475, it was held error to instruct the jury, in a case where the question of fraud was in issue, that they should find against the conclusion of fraud, unless they were "satisfied by a preponderance of evidence." In *Schmick v. Noel*, 72 Tex. 1, an instruction was *criticised*, which told the jury that fraud could not be presumed, but must be proved to the *satisfaction* of

the jury, and which at the same time told them that it could be proved by circumstantial evidence. The instruction was regarded as self-contradictory, but we do not see why. We are unable to adopt the views of these courts.

Two decisions in this state, not cited to us, bear upon this question to some extent. In *Marshall v. Ins. Co.*, 43 Mo. 586, the action was upon a policy of marine insurance, and the defense was that the plaintiffs burned the boat to defraud the defendant. An instruction, given for the plaintiff, was to the effect, that it devolved on the defendant to prove *to the satisfaction of the jury* that the plaintiffs, or one of them, burned the boat or caused it to be burned. For the defense an instruction was given, which told the jury that, if they should be of opinion from the evidence that it was *more probable* that the burning of the boat was brought about by the procurement of the plaintiffs than that they were innocent of it, they must find the issue for the defendant. As the defendant was the appellant, the question was upon the propriety of the instruction given for the plaintiff. The court held that the giving of it was not error. WAGNER, J., in giving the opinion of the court, said : " In considering instructions given by the court, they must be all taken and construed together ; and, if they harmonize, and assert no inconsistent principle of law by which the minds of the jury could have been misled, they cannot be declared erroneous. It is believed that it is the constant habit in this state to instruct juries that they must be satisfied, or that certain facts must be proved to their satisfaction. This is usually accompanied with language informing them that a preponderance of evidence is sufficient in civil cases, but that they must be satisfied beyond a reasonable doubt in criminal cases. In all civil cases it is the duty of the jury to decide in favor of the party on whose side the weight of evidence preponderates, and according to

the reasonable probability of truth.  Taking the two instructions together, they simply say to the jury, that if they are satisfied from the evidence that it is more probble that the burning of the Magnolia was brought about by the procurement of the plaintiffs, than that they are innocent of it, they must find for the defendant.  This, I think, was a perfectly unexceptionable presentation of the law, and was sufficiently favorable to the defendant.''

In *Wannell v. Kem*, 57 Mo. 478, 485, 488, there was an issue of fraud, as to which issue the defendant had the burden of proof.  The verdict and judgment having been for the defendant, the plaintiff appealed and challenged a series of instructions given by the court.  One of them told the jury that it must appear *to the satisfaction of the jury* that Kem, in making the purchase, relied solely upon the statements made by Brolaski, and that he was induced to buy this stock upon such representations or statements.  Another told them that fraud on the part of Brolaski must be established *to the satisfaction of the jury*, before they could return a verdict in Kem's favor.  The court, speaking through NAPTON, J., held that the instructions, taken together, were more favorable to the plaintiff than he had a right to claim.  No observation was made on the two instructions here referred to.  It should seem, however, that, if the language of the instructions above quoted had been regarded as constituting a serious departure from the settled rule on the subject, the court would have made some observation on the question.

In *Hitchcock v. Baughan*, 36 Mo. App. 216, 220, error was assigned on the *refusal* of several instructions, which told the jury that the evidence of the false and fraudulent misrepresentations must be '' clear and convincing ; '' or '' of the clearest character,'' or making the fact of such misrepresentations appear '' in the clearest manner.''  We, of course, held that no error was committed in the refusal of them.  In the opinion of the

court it is said : " It is frequently said in cases in equity, where relief is sought on the ground of fraudulent misrepresentations, that, in order to justify equitable interposition, the court should be satisfied by the clearest evidence of the fraudulent misrepresentations, and that they were made under such circumstances as to show that the contract was founded upon them ; and this language has been used in judicial opinions in cases at law. *Holland v. Anderson*, 38 Mo. 55, 59 ; *Langdon v. Green*, 49 Mo. 363, 368 ; *Bryan v. Hitchcock*, 43 Mo. 527 ; *Bailey v. Smock*, 61 Mo. 218.   But we apprehend that there is no rule of law which warrants a court in instructing the jury in such a case in advising them as to the *quantum* or degree of proof necessary to make out an action or defense predicated upon deceit, in such superlative terms.   We know of no principle which takes such a case out of the ordinary rule, that the facts on which the right of action or defense is predicated, must be made out by a preponderance of the evidence, and to the reasonable satisfaction of the jury."

Some of the cases decided in our supreme court, and cited to us by the appellants in this case, are to the same effect.   In *Nall v. Railroad*, 59 Mo. 112, 114, the action was under the railroad double-damage law for the killing of certain cattle belonging to the plaintiff ; and it was held not error to refuse an instruction which told the jury that it devolved upon the plaintiff to prove that the damages were inflicted by the train of the defendant, and, if it did not *fairly and with certainty* appear from the testimony that such was the case, the finding should be for the defendant.

In *Culbertson v. Hill*, 87 Mo. 553, the action was under the statute for malicious trespass in killing a horse of the plaintiffs.   They recovered and the defendant appealed.   The court instructed the jury that the law demanded that the plaintiffs should show " by clear and certain proof that the defendant did maliciously

kill," etc.  This was said to be more favorable than the defendant had a right to demand.

In *Gay v. Gillilan*, 92 Mo. 250, 257, the action was a statutory proceeding to contest a will on the ground of undue influence.  The court gave an instruction to the jury which contained this language :  "And there must be proof that it was obtained by force or coercion, and, in order to set aside the will of a person of the sufficient mental capacity aforesaid, on the ground of undue influence, it must be shown that the circumstances of its execution are inconsistent with any other hypothesis than such undue influence, which cannot be presumed, but must be shown in connection with the will, and it devolves upon those contesting the will to show such undue influence by a preponderance of the testimony."  The court held that this instruction was erroneous because it told the jury that the evidence of undue influence amounting to moral force or coercion and destroying free agency " must be inconsistent with any other hypothesis,"—thus importing into a civil action the rule which is applied to circumstantial evidence in criminal cases.

In the case before us no instruction was given for the attaching plaintiffs, such as was given for the defendant in the case of *Marshall v. Ins. Co.*, 43 Mo. 586, above quoted ; and it should be added that the fraud there imputed was a statutory felony.  It, therefore, seems that we have no direct adjudication on the point under consideration in this state, though the cases which approach it most closely rather tend to sustain the instruction complained of, than otherwise.  We, therefore, feel ourselves at liberty to decide it upon principle.  Our view is that no error was committed in giving these instructions.  If the attaching plaintiffs had desired such a qualification as was given for the defendant in *Marshall v. Ins. Co.*, *supra*, they could, no doubt, have obtained it by asking for it.  The failure of the court to

give it was mere non-instruction, such as does not afford ground for reversing a judgment in civil cases. That the jury are, in ordinary civil cases, including those involving the issue of fraud, to decide merely according to the preponderance of the evidence, cannot be affirmed as a universal proposition. In many cases there may be no evidence introduced by the defendant, and hence there will be no preponderance of evidence at all. But, even in cases where the defendant does introduce evidence, it is not true, as a universal proposition of law, that the plaintiff is entitled to recover merely because his evidence may preponderate over that of the defendant. To borrow the language of some of the cases, the plaintiff must introduce evidence sufficient to *move the court*, without reference to the evidence of the defendant. The meaning is that a suitor cannot claim the aid of the sovereign against another person until he produces evidence such as reasonably convinces or satisfies the person or persons, appointed by the law to try the facts, of the truth of the state of facts upon which the law predicates his right to relief. And they ought to be convinced in every case, not only that the hypothesis of the plaintiff is *more probable* than the opposing hypothesis, but also to their satisfaction, or what is the equivalent expression, to their reasonable satisfaction. The stereotyped forms of instructions are "if the jury *believe* from the evidence," or "if the jury *find* from the evidence." It seems to us that it is merely the equivalent of this to tell the jury that they ought to be *satisfied* from the evidence. This does not, of course, mean satisfied to a demonstration, nor even to that moral certainty which is required in criminal cases, and which is expressed in the use of the words "beyond a reasonable doubt." This should be especially so in cases of fraud, where the law presumes honesty and right acting ; and the expressions in judicial opinions in cases in equity where the judges . try the facts, which are

alluded to in the language above quoted from the opin-
ion of this court in *Hitchcock v. Baughan*, 36 Mo. App.
216, 220, are but expressions of this doctrine ; for, in
cases of fraud, there manifestly ought not to be any
difference in the probative force of the evidence to sus-
tain the proposition of fraud, where the case is tried by
a chancellor and where it is tried by a jury.   We con-
clude by reaffirming the propositions stated in the
opinion in that case, that the proposition of fraud in
civil actions must be made out " by a preponderance of
evidence *and* to the reasonable satisfaction of the jury,"
by a preponderance of the evidence where the evidence
is conflicting, and in every case, where the plaintiff
depends upon it for his right of recovery, to the reason-
able satisfaction of the jury.   We, accordingly, over-
rule this assignment of error.

III.   The next assignment of error is, that the
court erred in refusing the following instructions
requested by the attaching plaintiffs :

" 10.   The court further instructs you that, if you
shall find and believe from the evidence in this cause
that Goldstein & Rosenwater executed this bill of sale
to Roth and White for the purpose of hindering, delay-
ing or defrauding some of their creditors, and that Roth
and White knew of such intent, and accepted such
transfer in order to assist in its execution, then the con-
veyance to them is fraudulent and void, and your ver-
dict should be for defendant, even though you may
further find that Roth and White paid the full market
value for the goods.

" 11.   And the court further instructs you that, if
in the present case you shall find from the evidence
that Goldstein & Rosenwater were indebted to Samuel
White, one of their former clerks, in the sum of $3,100
or $3,200, and that, on the twenty-fifth day of July,
1887, they conveyed to Jacob P. Roth and Samuel
White their stock of goods at Charleston, together with

their books of account, for the sum of about $5,700 ; that part of the consideration was settled by claims that. the said White held against Goldstein & Rosenwater, and the balance by the check and note of Jacob P. Roth, such conveyance cannot be regarded in law as a preference given to the said White, but constitutes in law a sale, or an attempted sale, to both Roth and White ; that, if you shall find from the evidence that Goldstein & Rosenwater made said transfer to hinder, delay or defraud their other creditors, and that Jacob P. Roth and Samuel White took the same to aid them in so doing, such transfer is fraudulent and void, and your verdict should be for the defendants, although they may have paid full value for the property transferred."

We are of opinion that error was committed in refusing these instructions, or at least *one* of them. Both of them contain the direction that the jury might find for the plaintiff, notwithstanding the payment by the interpleaders of the full market value of the goods, if the sale was made for the purpose of hindering, delaying or defrauding the other creditors of Goldstein & Rosenwater. The rule is that "if one, knowing that a debtor is selling his property to hinder, delay or avoid the payment of his debts, buys it and *pays the full value of it*, thereby enabling the debtor to carry out his fraudulent design, such sale will be adjudged fraudulent, because the purchaser becomes a participant in the iniquitous purpose of the debtor." *Shelley v. Boothe*, 73 Mo. 74, 76 ; *Kuykendall v. McDonald*, 15 Mo. 416, 420; *Potter v. McDowell*, 31 Mo. 62, 74; *McNichols v. Rubleman*, 13 Mo. App. 515, 521. In this case there was evidence tending to show that the goods of the debtor were transferred to White and Roth at a fair valuation. The jury were, therefore, liable, unless cautioned as to this principle of law, to give controlling weight to this circumstance. In no ie

of the instructions, which were given, was this principle stated to the jury; nothing can be extracted from any of the other instructions which, by fair interpretation, conveys such an idea. The attaching plaintiffs were, therefore, entitled to an instruction explaining this principle, and the refusal of it was prejudicial error. If the instruction, numbered 10, had been given, we are not prepared to say that prejudicial error would have been committed in refusing the instruction, numbered 11; since, with the exception of the explanation of this principle, the jury were instructed as to the law of the case with sufficient fulness. But, reluctant as we are to reverse a judgment where the trial has entailed such a great amount of costs, we are constrained to hold that such must be our judgment in this case.

The judgment of the circuit court will be reversed and the cause remanded. All the judges concur.