## MULLEN v. McKIM ET AL.

1. EVIDENCE, IMPEACHING.

A witness is not to be impeached by proof that on some other occasion he has made statements inconsistent with his testimony at the trial concerning matters not relevant to the issue, nor at all without laying the foundation for an impeachment by first calling his attention to the alleged contradictory statement.

2. TRUSTS—PROOF.

Clear, certain and conclusive evidence is required to establish a trust.

3. AMENDMENTS.

Upon defendant's objection, leave to file an amended complaint setting up a new cause of action will be refused.

4. PRACTICE.

An objection that an amended complaint sets up a new cause of action cannot be raised for the first time in this court.

5. PRACTICE—SPECIFIC PERFORMANCE—DAMAGES.

Generally, an action for specific performance will be dismissed when it appears that the defendant is incapable to perform, and the plaintiff knew of such incapacity at the time of bringing the suit. Nevertheless, to prevent a failure of justice, the action may be retained for the purpose of awarding damages in lieu of specific relief.

*Error to the District Court of Arapahoe County.*

THE original complaint, filed in June, 1882, in substance alleges that Margaret E. Cody, the mother of plaintiff Paris McKim, was the owner of certain lots in the city of Denver which in 1872 she transferred to the defendant Mullen by a quitclaim deed; that said deed, although absolute on its face, was given by her, and accepted by the defendant, as a mortgage to secure the payment of about $500 then owing to the defendant by Mrs. Cody; that thereafter, in 1873, Mrs. Cody paid to said Mullen the mortgage indebtedness, when, instead of reconveying to her, Mullen, at her request, consented and agreed to keep and hold the legal title to said real estate in trust for the plaintiff Paris McKim (who at that time was Paris Cody, the infant daughter of Mrs. Cody, and of the age of fourteen years), until she attained her majority, or until requested by the beneficiary to execute the trust;

and upon the happening of either of said contingencies the trustee agreed to convey to his *cestui que trust*; that from that time to the present Mullen has so held the legal title to said property, and has refused upon demand of the beneficiary, who now has attained her majority, to convey to her the said property.

To this original complaint a demurrer by the defendant was interposed, upon which there seems to have been no ruling. The case, in this condition, remained on the docket for about ten years, when an amendment to the complaint was filed, and thereafter, in June, 1892, by leave of the court, there was filed an amended complaint, being in substance a combination of the original complaint and said amendment. In its allegations the amended differed from the original complaint in this, that the former alleges that the trust upon which defendant Mullen held said property was reduced to writing and signed by him, and left for safekeeping with one Charles C. Post, but afterwards was mislaid or lost, and cannot now be found ; and in this further allegation, that whilst the legal title was in the defendant Mullen, contrary to his trust, he sold and conveyed to innocent purchasers all of said property, and cannot now convey the same to plaintiffs. A different relief is prayed for in the amended complaint, in that, while the prayer for relief in the original complaint was for a conveyance of the property to plaintiffs, in the amended complaint the prayer is for an accounting and for a money judgment; general relief being prayed for in both complaints.

To this amended complaint an answer was filed by the defendant, denying substantially all of its allegations, and setting up as a bar to the cause of action the plea of the statute of limitations, to the effect that the cause of action therein set forth did not accrue within the six years next before the commencement of the action.

Such affirmative defense was traversed by plaintiffs' replication, and upon the issues thus joined, a hearing was had before the court, findings were made, and an interlocutory

decree was entered on the 27th day of October, 1892, in which the court found the issues for the plaintiff, and that the defendant did execute the declaration of trust in favor of said Paris McKim (then Paris Cody) substantially as alleged in the amended complaint, and did there and then agree to hold the legal title to the real estate in question for and on account of said Paris McKim, as her trustee, until she should attain her majority, or until she should make demand for a conveyance.

The court further found that the defendant, before this action was begun, had conveyed all of this property to innocent purchasers, and therefore could not now execute a conveyance to the plaintiffs. Thereupon the court ordered a reference to take testimony with respect to the value of the property, to make an accounting between the parties, and to ascertain what was equitably due and owing from the defendant to the plaintiffs.

The referee proceeded to take the testimony of the parties, and reported his findings to the court. Upon due consideration thereof, the report of the referee was confirmed, with slight exceptions, and, as thus modified, his findings were made the findings of the court, upon which findings and those previously made by the court a final decree and judgment were rendered in favor of the plaintiffs and against the defendant, in the sum of $10,106.06. To this judgment the defendant prosecutes here his writ of error.

Mr. L. C. ROCKWELL and Messrs. BELFORD & MARSH, for plaintiff in error.

No appearance for defendants in error.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

1. Before the referee, counsel for plaintiff in error offered in evidence the answer of Mrs. Cody, purporting to have been filed in a suit theretofore brought in one of the district courts of this state, and relating to this same property, where-

in Powell & Hollister, creditors of Mrs. Cody, brought suit against her and the defendant Mullen, the object of which was to subject this property to their claim. The answer itself is not contained in the record, but only a summary of it, from which, however, it appears that her statements therein were inconsistent with her evidence upon the previous hearing before the court upon the main issues in the case, as to the nature and character of the trust and this deed of conveyance by her to Mullen, and as to her rights, if any, thereunder at the time of such former suit.

As we understand the record, the object of this offer was to impeach the credibility of Mrs. Cody by showing former inconsistent statements relating to an issue tried and determined before the cause was referred to the referee. The referee so understood the object, for he refused to admit the testimony because it was offered " simply for the purpose of contradicting Mrs. Cody, and as an admission of Mrs. Cody that that transaction was other than a trust." That was collateral to the issue pending before the referee, and had already been determined by the court. The attempted impeachment by evidence of matters not relevant to the issue which the referee was trying was not permissible. 1 Greenleaf on Evidence, sec. 462, *et seq.* For another and sufficient reason this ruling was right, for no foundation for the impeachment had been laid, by calling Mrs. Cody's attention to the alleged contradictory statement. *Ryan v. The People*, 21 Colo. 119.

Thereafter, upon the hearing of the referee's report before the court, counsel for plaintiff in error renewed this offer, which the court refused to entertain, and this ruling is now attacked. Why this offer was not made when the hearing was originally had by the court upon the main issue we are not advised, but must assume that no sufficient reason was presented to the trial court for reopening the case to take further evidence. Besides, as already stated, no sufficient foundation for the impeachment had been laid, and the evidence was properly excluded. *Ryan v. The People, supra.*

2. The plaintiff in error questions the finding of the court

that the trust was established. There is no specific finding that the deed from Mrs. Cody to the defendant was intended as a mortgage, but no serious objection is made because of this omission; but if there were, there is nothing in it, as the specific findings of the court that the trust was established, as stated in the amended complaint, necessarily include the finding that the deed was intended as a mortgage.

It is, however, the insufficiency of the evidence as a whole to establish the trust of which the plaintiff in error complains. Proof of such a trust requires clear, certain and conclusive evidence. After a careful examination of all the evidence, we are not disposed to say that the trial court was wrong in its findings. The evidence in support thereof was clear and certain, and notwithstanding the witnesses for the plaintiffs were squarely contradicted by the witnesses for the defendant as to the character of this conveyance and the existence of the trust, if the court (as it had the right to do) believed the witnesses for the plaintiffs, the evidence was convincing and sufficient to justify the findings of fact as made.

3. The principal error relied upon is that the court below refused to sustain the defendant's plea of the statute of limitations as a bar to plaintiffs' action. The contention is not that the statute bars the cause of action set out in the original complaint, for the suit was brought within the proper time; but that the cause of action contained in the amended complaint is a new and different one, and hence the statute applies to it the same as if the action itself were instituted at the time the amended complaint was filed. To this latter proposition numerous authorities are cited, which need not be considered, for, unless a new cause of action has been pleaded, or if the defendant has waived all objections thereto, the point attempted to be made is without merit.

The record shows that an amendment to the original complaint was filed by permission of the court. Thereafter, an amended complaint, combining the allegations of the original complaint and the amendment thereto, was filed by leave of court, and as a substitute for the two former pleadings. If

this amendment, or the amended complaint, sets up a new cause of action, upon defendant's objection the court would have refused leave to file it. *Givens v. Wheeler, Admr.*, 5 Colo. 598; 6 Colo. 149.

At the time no such objection was made, but, on the contrary, the defendant apparently consented, and when he filed his answer and voluntarily went to trial upon the issues tendered by this amended complaint, without interposing any objection thereto, he must be presumed to have assented to the order of the court allowing the new pleading to be filed. He cannot now be heard to object for the first time in this court that it sets up a new cause of action. *King v. Rea*, 13 Colo. 69.

If, however, it be conceded that this amended complaint does state a new or different cause of action, not only has the defendant waived his objection thereto upon that ground, but he also should lose the benefit of the plea of the statute of limitations, in so far as that defense applies as of the time of the filing of the amended complaint. It should be applicable only as of the time of the filing of the original complaint; otherwise the defendant would still get the benefit of an objection which he waived when he voluntarily consented that this new pleading should be substituted for the plaintiffs' two former ones. Sustaining this on principle see Waterman on Specific Performance, sec. 523; *U. P. Ry. Co. v. Harris*, 63 Fed. Rep. 800; *Preteca v. Maxwell L. G. Co.*, 50 Fed. Rep. 674.

But the amended complaint does not contain a new cause of action. The foundation of the cause of action in both complaints is the transaction constituting the trust; the cause of action in both is the violation of that trust; and both are equitable in character. The facts averred are substantially the same in both. The object of the action, as declared in the original complaint, was to establish the trust and enforce the specific performance thereof by obtaining a conveyance of the property. The object in the new pleading was to establish the same trust, and to obtain an accounting

to ascertain what profits, if any, defendant made out of the trust property, and to recover a money judgment therefor, in lieu of the property which the defendant had put beyond the plaintiffs' reach. But the prayer for relief, though it may be for different kinds, does not determine the cause of the action. The violation of the trust is still the cause of action in both pleadings.

In *Waterbury v. Fisher*, 5 Colo. App. 362, where the original complaint had for its object a sale of real property and an accounting, an amended complaint asking for partition, because the former relief could not be granted, was held not to state a new cause of action. In such cases, as well stated by Prof. Bliss, in seeking what is still called legal and equitable relief, or different kinds of relief, the plaintiff really does not unite different causes of action, for there is but one. He only seeks the two-fold relief for the one wrong. Bliss on Code Pleading (3d ed.), sec. 171.

Had this amended complaint been filed as the original complaint, relief by a money judgment would certainly have been proper. For the reasons stated, then, we are of the opinion that the statute of limitations is not a bar to this action.

If plaintiffs are estopped to maintain it, it is for another reason, not urged, however, by plaintiff in error. Under the old chancery practice, where specific performance was impossible either when the contract was entered into, or where subsequently and before suit brought, the defendant has disabled himself from completion, and the plaintiff knew of such incapacity before his suit for specific performance was instituted, the general rule was that the court would not retain the action merely for the purpose of awarding damages to the plaintiff in lieu of specific relief, but would dismiss the same and leave plaintiff to pursue his remedy at law. Pomeroy on Specific Performance of Contracts, sec. 475; *Brown v. Lapham et al., ante,* p. 264.

To this general rule, however, there were exceptions, and the courts have " allowed damages, even though the plaintiff knew, or had reason to know, at the time of bringing his

suit that a specific performance was impossible; but only when such relief in the equity action is necessary to prevent a failure of justice." Pomeroy, sec. 478, citing *Hamilton v. Hamilton*, 59 Mo. 232, and *Gupton v. Gupton*, 47 Mo. 37.

The case before us furnishes one illustration. While it is not clear from the pleadings when the plaintiffs first knew of this incapacity of the defendant specifically to perform, whether before or after the amended complaint was filed, yet it may be conceded that they knew it before instituting the action. If, then, when the amended complaint was filed, or at the trial, the court had dismissed the action because of plaintiffs' knowledge of defendant's incapacity acquired before the suit was brought, and had required the plaintiffs to bring an action for damages, there would have been a failure of justice; for, as the plaintiff in error himself contends, the statute of limitations would have been a bar to a new action. To avoid this, even under the old practice, equity would have retained jurisdiction and rendered a money judgment, if the allegations of the bill presented that issue.

Moreover, under the code procedure, although in Wisconsin and in the earlier Missouri cases the general rule still seems to be the same as at common law, in the state of New York and in other jurisdictions it has been held to be abrogated by the code. *Sternberger v. McGovern*, 56 N. Y. 12; *White v. Lyons*, 42 Cal. 279; *Eichbredt et al. v. Angerman*, 80 Ind. 208; Bliss on Code Pleading (3d ed.), secs. 162–172, and cases cited.

Our conclusion upon the whole case is that the judgment is right and should be affirmed, and it is so ordered.

*Affirmed.*